**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LIEUTENANT COMMANDER          )
KATHERINE L. MEADOWS,         )
United States Navy            )     No: 1:16-cv-168
531 N. Spring St              )
Pensacola, Fl. 32501,         )
                              )
            Plaintiff,        )
                              )
      v.                      )
                              )
HONORABLE RAY MABUS           )
Secretary of the Navy         )
(in his official capacity)    )
The Pentagon                  )
Room 4E686                    )
Washington, D.C. 20301        )
                              )
            Defendant.        )

### COMPLAINT FOR JUDICAL REVIEW

For her complaint against defendant, the Honorable Ray
Mabus, Secretary of the Navy (in his official capacity),
plaintiff alleges as follows:

### Parties

1.  Plaintiff is an officer on active duty in the United
States Navy, who has served on active duty for over 15 years and
2 months.

2.  Defendant, the Secretary of the Navy, is sued in his
official capacity as Secretary of the Navy.

## Jurisdiction

3.   This action is one arising under the Constitution or the laws of the United States pursuant to 18 U.S.C. § 1331. Plaintiff seeks judicial review of the decision of the Board for Correction of Naval Records pursuant to the Administrative Procedure Act 5 U.S.C. § 702.

## Venue

4.   Venue lies in this Court pursuant to 18 U.S.C. § 1391(e)(1)(A).

## Facts Relevant to All Counts

5.   Plaintiff was commissioned on November 22, 2000 following completion of Officer Candidate School, NAS Pensacola, Florida.

6.   Plaintiff has served continuously on active duty since she was commissioned an officer.

7.   Prior to the events at issue in this complaint, plaintiff enjoyed a high degree of success as a Naval officer. Plaintiff's assignments and achievements included:

    a.   Completion of Surface Warfare Officer School, NETC Newport, Rhode Island;

    b.   Between June 2002 and October 2004, combat deployments as a Division Officer with the USS LEYTE GULF (CG-55) and USS MOUNT WHITNEY (LCC-20) in support of Operation

ENDURING FREEDOM and Operation IRAQI FREEDOM and designation as a fully qualified Surface Warfare Officer;

    c.   Assignment to Joint Duty at the Defense Information Systems Agency (DISA) between October 2004—September 2006, including Temporary Duty assignment to the Office of Administrative Review of Detention of Enemy Combatants where she was a member of a team responsible for review of detainee continued detention/release;

    d.   Selected for Department Head and also for training as Public Affairs Officer, attending the Public Affairs Qualification Course, graduating in October 2006;

    e.   While assigned to the Navy Public Affairs Support Element (NPASE) plaintiff deployed as the Assistant Public Affairs Officer on USS NIMITZ (CVN-68) where she was awarded a Navy Achievement Medal and Navy Commendation Medal for her performance of duties;

    f.   Assignment as Public Affairs Officer for Explosive Ordnance Disposal Unit One from October 2008 through July 2010;

    g.   Assignment as Public Affairs Department Head and Public Affairs Officer for the USS RONALD REAGAN (CVN-76) and CARRIER STRIKE GROUP  Seven from July 2010 through November 2011 when she was re-assigned to fill the vacancy on staff of the Secretary of Defense, Public Affairs;

3

h.   Plaintiff was awarded several personal decorations for superior performance, including:  the Joint Service Commendation Medal, the Joint Service Achievement Medal (2 awards); the Navy Commendation Medal (3 awards), and the Navy Achievement Medal (2 awards)

8.   On or about 30 November 2011, plaintiff reported to the Office of the Secretary of Defense, Public Affairs ("OSDPA") from her curtailed assignment on the USS RONALD REAGAN.

9.   Plaintiff was assigned to work in Press Operations. After approximately 6 months, as had been her two prior predecessors, plaintiff was assigned out of Press Operations on temporary duty to the Community Relations Directorate.

10.   Neither during plaintiff's assignment to the Press Operations office nor to the Community Relations Directorate was plaintiff at any time counseled or advised that her performance was deficient in any way.

11.   Plaintiff's regular fitness report covering the period of her assignment in the Press Operations office (November 24, 2011 through March 29 2012) was highly laudatory of her work.

a.   Plaintiff's "Member Trait Average" of all evaluated performance criteria was 4.16 ("above standards") on a scale of 5.0 with a marking of 5.0 in the specific train "Military Bearing and Character."  The "Summary Group Average"

of all officers of the same grade rated by the Reporting Senior was 4.16, the very same as plaintiff.

  b. Plaintiff's promotion recommendation, based upon that period of evaluation was "Must Promote."

  c. Plaintiff was recommended for further follow-on service in either a Fleet Public Affairs Staff or a Joint Staff Public Affairs assignment.

  12. On March 14, 2012, plaintiff was awarded a Joint Service Achievement Medal "for meritorious service" by the Office of the Secretary of Defense for the period for which she was assigned to the Press Operations office.

  13. While assigned to the Community Relations Directorate, plaintiff served as spokesperson supporting the Under Secretary of Defense for Personnel Readiness with responsibility for support to the Deputy Assistant Secretary of Defense for Military Community and the Deputy Assistant Secretary of Defense for Family Policy and Civilian Personnel Policy.

  14. Plaintiff's duties in the Community Relations Directorate included providing Public Affairs support for programs including:  Federal Voting Assistance Program, Department of Defense Education Activity, Defense Manpower Data Center, and Mortuary and Casualty Affairs.  Plaintiff processed

and tracked all Operation ENDURING FREDOM casualty reports, and processed daily and weekly reports with Casualty and Mortuary Affairs.

15.   While plaintiff was assigned to the Community Relations Directorate, plaintiff also served as the VIP Tour Coordinator for Pentagon Tours, which included constructing a new tour route that was time-saving yet afforded tour participants the opportunity to see more of the Pentagon.   In developing this new tour route, plaintiff revised and re-wrote the VIP tour script used by Pentagon Tour Guides.

16.   On or about August 3, 2012, plaintiff received a memorandum dated August 3, 2012 indicating that she was to be released from her joint duty assignment "effective immediately" and returned to the Navy "with cause."   No "cause" was specified in the memorandum.   At no time was plaintiff ever suspended from duty.

17.   Following plaintiff's return to the Navy, plaintiff did not receive her fitness report documenting her performance for the reporting period until September 12, 2012.   There was no adverse fitness report referral memorandum accompanying the fitness report as is required by governing regulation.

18.   Although Petitioner requested a meeting with her reporting senior to receive a debrief on her fitness report,

6

plaintiff was handed the fitness report by the Director of Press Operations (not her reporting senior, nor in her chain of command at the time of her reassignment to the Navy) and directed to sign the fitness report on September 12, 2012.

19. Although plaintiff had detached from the Office of the Secretary of Defense staff, plaintiff was not provided an adverse fitness report referral memorandum nor was plaintiff briefed on the procedures and time limits for adverse fitness reports when the report was delivered to her.

20. As a result of the process followed by the Reporting Senior, on November 7, 2012, plaintiff filed a complaint for redress of wrongs pursuant to Article 1150, U.S. Navy Regulations, alleging that the fitness report received was inaccurate and unjust and that the procedures required by the governing regulation (BUPERSINST 1610.10C) pertaining to preparation and delivery of adverse Navy officer fitness reports had not been complied with.

21. On January 16, 2013, the Commandant, Naval District of Washington, concluded that plaintiff's Article 1150 complaint was "not cognizable because respondent is not a valid respondent . . . ."

22. Plaintiff was notified by memorandum that her Article 1150 complaint had been denied on February 13, 2013 and that no

further action would be taken on plaintiff's complaint of wrongs.

23.   Only after plaintiff had made her Article 1150 complaint did plaintiff's reporting senior for the affected fitness report meet with plaintiff, in February 2013, and provide plaintiff a memorandum concerning adverse fitness report referral, although it was dated October 16, 2012.   Plaintiff's fitness report had already been filed in her OMPF, and while the memorandum provided to plaintiff in February 2013 included instructions for completing the report, it failed to indicate, or account for, the fact that the fitness report had already been submitted to the Navy and had been filed in plaintiff's OMPF.

24.   During the meeting with plaintiff in February 2013, 6 months after plaintiff had been reassigned and been ordered to sign the adverse fitness report, plaintiff's reporting senior could provide no factual information concerning any specific deficiencies in her performance, and in response to all questions simply referred plaintiff to the content of the fitness report.

25.   On or about August 28, 2013, plaintiff filed an Application for Correction of her Naval Record with the Board for Correction of Naval Records (hereinafter "BCNR").

26. Plaintiff alleged that the fitness report was "unjust" and did not reflect her work and responsibilities "during the short time" she was assigned the Office of the Secretary of Defense.

27. Plaintiff noted that she had not been timely notified of the procedures for responding to an adverse fitness report and that the fitness report contained reference to a "detachment for cause" which is inappropriate in a joint service assignment.

28. In her memorandum accompanying her Application for Correction of Naval Record plaintiff stated that she was provided no specific alleged deficiencies; that no substantiation was provided for markings of 2.0 or below as is required by governing regulation; and the adverse fitness report had not been referred to her with proper instructions before it had been included in her OMPF.

29. On January 24, 2014, the BCNR was provided an Advisory Opinion by Navy Personnel Command regarding her Application.

30. In the Advisory Opinion, the author indicted that reporting seniors are provided guidance in the governing regulation concerning how they may report "misconduct" In a fitness report. The Advisory Opinion also noted that counseling may be accomplished in writing or informally in person.

31.   The author of the Advisory Opinion further opined that the fitness report received by plaintiff in her immediately preceding reporting period was "irrelevant" despite the fact that the reporting senior in the challenged report referred to plaintiff's duties in the prior reporting period.

32.   The author of the Advisory Opinion further opined that the report was a "valid report" asserting that the plaintiff failed to provide documentation that the "reporting senior acted improper [sic] or in error to support her claim."

33.   On March 4, 2014, plaintiff submitted a detailed rebuttal to the Advisory Opinion.  Plaintiff correctly asserted that she had not been found guilty of any "misconduct", nor even accused of "misconduct."

34.   Plaintiff also addressed specific material procedural errors that were supported by the administrative record and demonstrated that the reporting senior had not complied with regulations governing preparation and delivery of Navy fitness reports.

35.   Plaintiff also provided substantial evidence, corroborated by the author of the Advisory Opinion, that she had not been "detached for cause", which is a Navy-specific term, and no evidence appeared in her record that she had been suspended from duty.

10

36.   By letter dated March 20, 2014, the BCNR notified plaintiff that her Application for Correction of Naval Record had been denied. The Board "boilerplate" language stated that "after careful and conscientious consideration of the entire record, the Board found the evidence submitted was insufficient to establish the existence of probable error or injustice."  The BCNR "substantially concurred with the advisory opinion."

37.   As a result of the adverse fitness report in plaintiff's OMPF, plaintiff has failed of selection to Commander on the FY15 and FY16 Commander (O-5) Promotion Selection Boards. The FY17 Commander (O-5) promotion selection board is scheduled to meet in February 2016 and it is unlikely that plaintiff will be selected for promotion with the adverse fitness report in her Naval record. These failures are evidence of legal prejudice inuring from the improperly prepared and filed fitness report contained within plaintiff's Official Military Personnel File.

38.   Plaintiff timely filed this complaint seeking judicial review of the BCNR decision under the Administrative Procedure Act.

### COUNT I.

### (Arbitrary and Capricious Denial of Relief on Fitness Report)

39.   Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

11

40.   Defendant, the Secretary of the Navy, acting through his BCNR, acted arbitrarily and capriciously, and contrary to regulations governing the preparation of fitness reports, in denying plaintiff the relief requested (removal of the contested fitness report) because the evidence established clearly and conclusively that the reporting senior committed prejudicial legal error in the preparation of plaintiff's fitness report in the following particulars, warranting correction by the Board:

a.   The reporting senior failed, as is required by regulation, to substantiate with factual information any adverse marking of a 2.0 or less in Blocks 33, 36, 37 and 38 of the fitness report;

b.   The reporting senior failed to provide plaintiff with a memorandum regarding the adverse nature of the fitness report **prior to** this report being filed in plaintiff's OMPF.

c.   The Reporting Senior failed to counsel plaintiff at any time during the reporting period, asserting instead that it was "Not Required";

d.   The reporting senior referred to performance in a previous reporting period as adverse contrary to the performance evaluation and personal award documenting plaintiff's performance in that reporting period.

## COUNT II.

### (Arbitrary and Capricious Failure to Correct Military Record)

41.  Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

42.  The BCNR acted arbitrarily and capriciously and contrary to controlling statute and regulation by failing to correct plaintiff's OMPF by removing any documents referring to a "detachment for cause" from the Office of the Secretary of Defense, Public Affairs on the grounds that there is no provision of regulation providing for detachment for cause from a joint assignment; plaintiff had never been suspended from duty as is required by statute as a condition precedent to reassignment from a joint assignment; and the Navy procedures for detachment for cause were not applicable and were not employed in plaintiff's case.

WHEREFORE plaintiff requests that this Court enter judgment for plaintiff against defendant and order the following additional relief:

1)  Enter an order setting aside the decision of the Board for Correction of Naval Records and directing that defendant remove from plaintiff's OMPF the fitness report for the period March 30, 2012 to August 6, 2012 (4 months and 7 days) and all related documents referring or relating to that document.

13

2)   Enter an Order directing defendant to remove from plaintiff's Naval record any documentation referring or relating to a "detachment for cause" from her assignment with the Office of the Secretary of Defense, Public Affairs.

3)   Remand the case to the BCNR to determine the appropriate relief for plaintiff's failure of selection to promotion as a result of the corrective action taken by this Court pursuant to the Administrative Procedure Act.

4)   Order defendant to pay plaintiff's legal fees and expenses as the prevailing party pursuant to the Equal Access to Justice Act;

5)   Order such other relief as the court may deem warranted on the record.

Respectfully submitted,


s/Charles W. Gittins
(DC Bar # 429710)

P.O. Box 144
Middletown, VA 22645
(540) 327-2208
(866) 722-2798(fax)
e-mail:  cgittins@aol.com

*Counsel for LCDR Meadows*

14